UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-CR-20941-SCOLA

UNITED STATES OF AMERICA
      *Plaintiff,*

vs.

LUIS MINIERT
      *Defendant.*
_____/

**DEFENDANT LUIS MINIERT'S
SENTENCING MEMORANDUM AND REQUEST FOR VARIANCE**

Pursuant to Rule 32(f) of the Federal Rules of Criminal Procedure and Rule 88.8 of the Local Rules for the United States District Court for the Southern District of Florida, Mr. Luis Miniert respectfully submits this sentencing memorandum in support of his request for a sentence of less than one year incarceration and to allow him to self-surrender to a recommended facility in South Florida.

## INTRODUCTION

Luis Miniert is a 27 year old man whose corporate ambition led him to participate in a credit card fraud scheme that led to the present indictment. Now after pleading guilty and cooperating with the Government, Mr. Miniert is facing a minimum guideline sentence of 32 months.  Mr. Miniert pled guilty to counts One and Five of a five count indictment charging him with conspiracy to commit access device fraud and aggravated identity theft.  Mr. Miniert's total offense level is 15 with a criminal history category I and a corresponding

guideline imprisonment range of 18 to 24 months, plus a 24 month consecutive sentence for the aggravated identity theft conviction.

For the reasons set forth in this memorandum, Mr. Miniert respectfully requests that the Court impose a sentence of less than one year imprisonment as this sentence is sufficient, but not greater than necessary to fulfill the sentencing goals set forth in 18 U.S.C. § 3553(a).

## APPLICATION OF 18 U.S.C. § 3553

The Supreme Court held in *United States v. Booker*, 543 U.S. 220 (2005), that courts have the discretion to sentence outside of the guidelines. *Booker* held that the guidelines were advisory and that courts should not mechanistically apply the guidelines. The Sentencing Reform Act, as revised by *Booker*, requires consideration of the guidelines, but also mandates that the court exercise its discretion by tailoring a sentence in light of the statutory criteria contained in 18 U.S.C. § 3553(a).

Section 3553(a) directs sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a) states that such purposes include consideration of the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the need for the sentence:

    A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    B. to afford adequate deterrence to criminal conduct;
    C. to protect the public from further crimes of the defendant; and
    D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*See*, § 3553(a).

A consideration of these factors inures toward the determination that a prison sentence of less than one year is sufficient, but not greater than necessary to fulfill the aforesaid sentencing goals.

### NATURE AND CIRCUMSTANCES OF INSTANT OFFENSE

In 2011, Mr. Miniert began working at the Apple Store on the Lincoln Road Mall in Miami Beach.  AMr. Miniert started out as a stock clerk making sure that items were kept in stock and delivering merchandise to the sales floor after they were purchased.  He did this for approximately three years, and in the Fall of 2014, Mr. Miniert was promoted to the position of a sales associate. Mr. Miniert was working on the sales floor, promoting Apple merchandise and selling items to customers.  Mr. Miniert was a perfect fit for the job; his affable personality and friendly demeanor allowed him to succeed on the sales floor.

Mr. Miniert's ambitious nature, however, led him to engage in the conduct for which he is to be sentenced.  At the Apple store, employees were rewarded on their sale statistics.  The more sales an associate made, the higher the probability that he or she would earn a promotion.  Mr. Miniert was always looking to make a sale to meet his quota.  Although he was motivated by earning commissions, his true goal was to become a store manager.  Mr. Miniert knew that the way to achieve the mark was to outsell the other associates.

In the Fall on 2014, a person, who later became known to Mr. Miniert as Rafael Prats, came to the store and made a large purchase from him.  Prats

3

and Mr. Miniert exchanged contact information and Prats gave Mr. Miniert a significant monetary tip.    Prats recognized that Mr. Miniert's ambition and naiveté made him an ideal member to join his scheme.    A couple of weeks later, Prats called Mr. Miniert and they conducted another transaction.   After this transaction, Prats again gave Mr. Miniert a considerable tip.

After a few more sales, Prats informed Mr. Miniert that he was going to send in some of his associates to make purchases from him. Prats asked in return that Mr. Miniert process the transactions without asking questions. When Mr. Miniert pressed Prats, Prats told him that the credit cards were international credit cards that were difficult to trace.    Prats reassured Mr. Miniert that he was not going to have any problems because the cards matched the names of the buyers and he could always confirm the name on the credit cards with the buyer's identification.   To further reassure Mr. Miniert, Prats mentioned other sales associates by name that were working for him.   For processing the credit cards, Prats would pay Mr. Miniert a percentage of the transaction.

At first, Mr. Miniert was uncertain as to his participation, but after speaking to his coworkers, he made the fateful decision to join the scheme.  At first, it was rather routine; Prats would come in to the store and make purchases, the credit cards would match his identification.  Then, Prats sent in his girlfriend and then he started sending random buyers.  Mr. Miniert, while recognizing that what he was doing was wrong, was comforted by the fact that the buyers identification matched the names on the credit cards.   Foolishly,

Mr. Miniert was operating under the false premise that he was not committing a crime because the names matched. Over the course of the next 10 months, Mr. Miniert transacted close to $120,000 in 44 fraudulent credit card transactions.

Notably, Mr. Miniert did not skim or steal the credit card information from Apple customers and he took no part in the reproduction of the fraudulent credit cards. Moreover, while he was promised a percentage of the credit card transactions, in reality, he received less than $5,000 for his participation in the scheme.

### LUIS MINIERT'S PERSONAL HISTORY AND CHARACTERISTICS

The Court should consider Mr. Miniert's youth and inexperience as a reason to sentence him to less than one year in prison. The United States Supreme Court has observed on three occasions that a sentencing scheme which does not take into consideration the "lessened culpability" and the greater "capacity for change" inherent in sentencing a younger individual is unconstitutional. In **Graham v. Florida**, 560 U.S. 48  (2010), the Court found that Florida's sentencing scheme, which denied a juvenile opportunity for parole, was unconstitutional. This conclusion flowed from **Roper v. Simmons**, 543 U.S. 551 (2005), where the Supreme Court invalidated the death penalty for all juvenile offenders under the age of 18. And recently, in **Miller v. Alabama**, 567 U.S. 460 (2012), the Supreme Court held that sentencing a juvenile to a life in prison without the possibility of parole was unconstitutional. In **Miller**, the Court wrote:

5

> To start with the first set of cases: *Roper* and *Graham* establish that children are constitutionally different from adults for purposes of sentencing. Because juveniles have diminished culpability and greater prospects for reform, we explained, "they are less deserving of the most severe punishments." *Graham*, 560 U. S., at ___ (slip op., at 17). Those cases relied on three significant gaps between juveniles and adults. First, children have a " 'lack of maturity and an underdeveloped sense of responsibility,'" leading to recklessness, impulsivity, and heedless risk-taking. *Roper*, 543 U. S., at 569. Second, children "are more vulnerable . . . to negative influences and outside pressures," including from their family and peers; they have limited "contro[l] over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings. Ibid. And third, a child's character is not as "well formed" as an adult's; his traits are "less fixed" and his actions less likely to be "evidence of irretrievabl[e] deprav[ity]." *Id.*, at 570.

> Our decisions rested not only on common sense—on what "any parent knows"—but on science and social science as well. *Id.*, at 569.

> **Miller**, 567 U.S. at ____ (slip op., at 8).

Mr. Miniert was not a juvenile in the sense that he was 24 years old at the time of the offense. Nevertheless, the Supreme Court's observations are just as meaningful and applicable here. Mr. Miniert was undoubtedly influenced by the participation of his coworkers and one of their managers. Their appeal was so great, that he abandoned his common sense and joined the fraudulent scheme. This experience has served as a real life wake-up call for Mr. Miniert who will not be seduced by that life-style today, or ever again.

Rehabilitation is another goal of sentencing to be considered by the Court. See **Simon v. United States**, 361 F. Supp. 2d 35, 48 (E.D.N.Y. 2005). As aptly stated, the goal of rehabilitation "cannot be served if a defendant can look forward to nothing beyond imprisonment." "A judge should be hesitant

before sentencing so severely that he destroys all hope and takes away all possibility of useful life." **United States v. Carvajal**, 2005 WL 476125, *6 (S.D.N.Y.).   Mr. Miniert is a man who worked diligently and tirelessly to advance his career. Mr. Miniert was looking forward to becoming a successful, productive and legally contributing member to his industry and community. Additionally, Mr. Miniert has already provided to the Court demonstrable proof of his willingness to rehabilitate.   Following his arrest and while under supervision by pretrial services, Mr. Miniert has provided continuous negative test results for any narcotics.  These results are significant when compared to his almost daily marijuana use that he disclosed during his pre sentence report interview.   In short, he is a talented and capable man, worthy of a chance to rehabilitate.

Despite not having been sentenced yet, Mr. Miniert has suffered greatly since his arrest. With no criminal history, the experience of a federal arrest has been a life changing one. The public shame and embarrassment that stems from a federal arrest for a man wholly unfamiliar with the criminal justice system has forced painful introspective assessments of his poor judgment and actions. Mr. Miniert has suffered a precipitous fall from grace, the loss of many things dear to him, including his future employment prospects. Now he finds himself a convicted felon, humiliated before his family, friends and peers and facing a significant prison sentence – undeniably a constellation of factors which indeed serve as a deterrence to everyone familiar with his predicament. Mr. Miniert asks for an opportunity to rebuild his life.

Mr. Miniert asks the Court to also vary downward from the sentencing guidelines based on his cooperation.   Because the Government has filed a motion to reduce Mr. Miniert's sentence under § 5K1.1 of the sentencing guidelines the Court may take into account his cooperation and reduce his sentence.  As will be detailed at his sentencing hearing, Mr. Miniert cooperated with investigators shortly after his arrest.   Mr. Miniert debriefed with the Government and investigators and provided information on three other employees who were indicted shortly after Mr. Miniert's information. Additionally, Mr. Miniert conducted a controlled text messaging conversation with a co-conspirator and obtained incriminating statements that were subsequently used against the co-conspirator.  Based on his cooperation, the Government indicted three individuals who have since pled guilty. Accordingly, Mr. Miniert respectfully requests that the Court take into account his cooperation and vary downward from a guideline sentence and impose a sentence of less than one year.

## 18 U.S.C. §  3553(A)(2) FACTORS

Sentencing Mr. Miniert to less than one year in prison will satisfy the factors laid out in Section 3553(a)(2). By imposing a reduced sentence upon Mr. Miniert, the Court will still reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense. This will serve to impress upon him both the seriousness of his offense and the importance of respecting the laws of the United States. A term of imprisonment will also serve as a deterrent of further criminal conduct and will protect the public from

crimes by Mr. Miniert. Although nothing in the record suggests that Mr. Miniert will reoffend, the experience thus far has provided more than enough incentive to never commit another crime again. The stress and emotional toll thus far coupled with incarceration and punishment will eliminate the risk of recidivism.

Additionally, Mr. Miniert graduated from high school and was looking forward to going to college to become a nurse. Moreover, he is not suffering from addiction, mental health issues or destructive habits, therefore no medical care, rehabilitative treatment or other correctional treatment is required.

Finally, need to avoid unwarranted sentence disparities should guide the court in imposing a sentence of less than one year. It appears that nine other co-conspirators have been indicted and five have been sentenced. Rafael Prats, the organizer of the scheme who was responsible for a loss of over $549,000 and recruited some of the Apple employees and buyers was sentenced to 44 months. Prats' assistant, Rodolfo Martinez, who similarly was responsible for recruiting Apple store employees and who was attributed to have cause a loss of $96,000 was sentenced to 33 months. Two Apple store employees, Kevin Mena and Jeremy Bueno, who played similar roles to Mr. Miniert's and who were responsible for causing a loss of $100,000 and $70,000, respectively, were each sentenced to one-year and one day in prison. Finally, Karla Dominguez who was a buyer and caused a loss of $95,000 was sentenced to seven months in prison. Accordingly, sentencing Mr. Miniert to less than one

year in prison would avoid any sentence disparity between members of the conspiracy.

## CONCLUSION

Mr. Miniert recognizes he made a series of bad decisions, is remorseful and is prepared to meet those consequences as the Court deems fit. Nevertheless, because he is a young man who has indicated his desire to rehabilitate, he cooperated with investigators and is committed to advancing his career and remaining crime-free, the Court should vary downward and impose a sentence of less than a year imprisonment.

Respectfully submitted,

*/S/ Erick Cruz*
Erick Cruz
Fla. Bar Number: 43628
Attorney for Defendant
1108 Ponce de Leon Blvd.
Coral Gables, FL 33134
Tel. 305.444.3844
Cruz@ErickCruzLaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 9, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

By:   */S/ Erick Cruz*
Erick Cruz